# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| DEANNA LOUISE MURPHY,<br><br>    Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | No. C13-3011-LTS<br><br>**MEMORANDUM OPINION AND ORDER** |

Plaintiff Deanna Louise Murphy seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for Social Security Disability benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Murphy contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that she was not disabled during the relevant period of time. For the reasons that follow, the Commissioner's decision will be reversed and remanded for further proceedings.

## I.  BACKGROUND

Murphy was born in 1960 and previously worked as a cashier and cake decorator. AR 102, 226. She protectively filed for DIB on June 12, 2010, alleging a disability onset date of April 30, 2009. AR 10. Murphy claims disability due to migraine headaches, back pain and nerve damage to her spine. AR 13. Her claim was denied initially and on reconsideration. AR 10. She then requested a hearing before an

Administrative Law Judge (ALJ) and on January 19, 2012, ALJ Thomas Donahue held a hearing during which Murphy and a vocational expert (VE) testified. AR 24-44.

On March 21, 2012, the ALJ issued a decision finding that Murphy was not disabled from April 30, 2009, through the date of his decision. AR 10-18. Murphy sought review of this decision by the Appeals Council, which denied review on January 14, 2013. AR 1-3. The ALJ's decision thus became the final decision of the Commissioner. AR 1; 20 C.F.R. § 404.981.

On March 14, 2013, Murphy filed a complaint (Doc. No. 3) in this court seeking review of the Commissioner's decision. On September 18, 2013, with the parties' consent (Doc. No. 8), the Honorable Mark W. Bennett transferred this case to me for final disposition and entry of judgment. The parties have briefed the issues and the matter is now fully submitted.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 404.1505. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 404.1520; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the

claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 404.1521(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S. Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 404.1545(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 404.1545(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 404.1520(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that

the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III. ALJ'S FINDINGS

The ALJ made the following findings:

(1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

(2) The claimant has not engaged in substantial gainful activity since April 30, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*).

(3) The claimant has the following severe impairment, which causes her more than minimal work-related limitations: mild degenerative disc disease of the lumbar spine status post remote spinal surgery (20 CFR 404.1520(c)).

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

(5) After careful consideration of the entire record, the undersigned finds that the claimant has the following residual functional capacity: she can lift ten pounds frequently and twenty pounds occasionally; she can sit for two hours at a time and for a total of six hours in an eight-hour day; she can stand for two hours at a time and for a total of six hours in an eight-hour day; she can walk three blocks at a time; she should never climb ladders, ropes, or scaffolds; and she should only occasionally balance, stoop, kneel, crouch, crawl, bend, or climb stairs and ramps.

(6) The claimant is capable of performing past relevant work as a cashier (DOT: 211.462-010; unskilled work

        with an SVP of 2 at the light exertional level) and as a cake decorator (DOT: 524.381-010; skilled work with an SVP of 6 at the light exertional level[)]. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

   (7)   The claimant has not been under a disability, as defined in the Social Security Act, from April 30, 2009, through the date of this decision (20 CFR 404.1520(g)).

AR 12-18.

## IV.   *THE SUBSTANTIAL EVIDENCE STANDARD*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that

6

evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V. DISCUSSION

Murphy argues the ALJ's decision is not supported by substantial evidence for the following reasons:

    I.    The ALJ erred in finding that Murphy has past relevant work.

II. The ALJ did not give appropriate weight to the opinion of Murphy's treating physician.[1]

III. The ALJ gave too much weight to the fact that Murphy collected unemployment benefits during part of her period of alleged disability.

I will discuss these arguments separately below.

## A.  *Past Relevant Work*

After determining Murphy's RFC, the ALJ found that her "work as a cashier and as a cake decorator meets the durational, earnings, and recency requirements of substantial gainful activity." AR 16. The ALJ then found, based on the VE's testimony, that Murphy's RFC does not preclude her from performing either of those jobs. *Id.* In light of this finding, the ALJ concluded that Murphy is not disabled. *Id.* The ALJ then made alternative findings at Step Five, determining that Murphy could also perform other jobs that exist in significant numbers in the national economy and that a finding of "not disabled" is appropriate under the Medical-Vocational guidelines. AR 17-18.

Murphy contends that the ALJ erred in finding that she has past relevant work. She notes that in November 2010, the state agency consultant found that she "does not have any PRW [past relevant work] that she could return to." AR 193. Murphy further contends that neither the VE's testimony nor any other evidence in the record supports the ALJ's finding that she has past relevant work. The Commissioner disagrees, contending that the evidence supports the ALJ's finding of past relevant work. The Commissioner further argues that even if the ALJ was wrong, the error was harmless because the record supports the ALJ's alternative findings, at Step Five, that also result in a finding of no disability.

---

[1] While the argument heading refers only to the treating physician, the argument itself also addresses the ALJ's weighting of other medical opinions.

The Commissioner's regulations define "past relevant work" as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b)(1). The regulations further state that "[s]ubstantial gainful activity is work activity that is both substantial and gainful," as follows:

> (a) *Substantial work activity*. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.
>
> (b) *Gainful work activity*. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.
>
> (c) *Some other activities*. Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

20 C.F.R. § 404.1572. In determining whether work constitutes "substantial gainful activity," the Commissioner must consider the "amount of pay, length of time worked, and whether the work was conducted in a special work area or with special assistance." *Thompson v. Sullivan*, 878 F.2d 1108, 1110 (8th Cir. 1989) (citing 20 C.F.R. § 404.1574). Moreover, the Commissioner has established a minimum dollar amount that a claimant must earn each month before being found to have engaged in substantial gainful activity. *See, e.g.,* http://www.socialsecurity.gov/oact/COLA/sga.html. The amounts for 2007, 2008 and 2009, respectively, were $900, $940 and $980. *Id.*

Here, Murphy is correct that the ALJ's decision contains no analysis of the relevant factors to determine whether her prior jobs met the requirements to be considered as past relevant work. Instead, the ALJ simply stated a finding to that effect. AR 16. The Commissioner argues, however, that the record supports the ALJ's finding – at least with regard to the cake decorator position. Murphy testified that she performed the cake decorator position at Wal-Mart. AR 27. She was employed by Wal-Mart from April

9

2007 to April 2009.  AR 27, 145, 157.  Her earnings from Wal-Mart for 2007, 2008 and 2009 were, respectively, $11,502.81, $14,962.29 and $6,655.69.  AR 109-10, 114. Given the number of months Murphy worked at Wal-Mart during each of those years, her earnings were above the SGA level.[2]  In light of the length of Murphy's employment, the amount of her earnings and her own testimony, substantial evidence supports the ALJ's finding that she had past relevant work as a cake decorator.

The Commissioner also argues that any error on this issue would not require remand, as the ALJ also proceeded to Step Five and, again, found that Murphy was not disabled.  AR 16-17.  He made this finding based on (a) the VE's testimony that a person of Murphy's age, education, work experience and RFC can perform other jobs that exist in the national economy and (b) the Commissioner's Medical-Vocational guidelines.  *Id*. Having carefully reviewed the VE's testimony, and the ALJ's findings at Step Five, I find that the ALJ's alternative, Step Five findings are supported by substantial evidence in the record as a whole.  Thus, I agree with the Commissioner that any error at Step Four would be harmless error.  Even if Murphy had no past work that qualifies as "past relevant work," there would be no need to remand this case for a Step Five determination because the ALJ has already made that determination.  Reversal and remand is not required with regard to an error by the ALJ that does not affect the outcome of the claim. *See, e.g., Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008).

### B.     Weight Of Medical Opinions
####      1.     Applicable Standards

In evaluating a claim for DIB, the ALJ is required to consider all relevant evidence, including medical records and medical opinions.  *See* 20 C.F.R. §§ 404.1513,

---

[2]     2007 – 9 months worked, $1278 per month (SGA level = $900)
       2008 – 12 months worked, $1246 per month (SGA level = $940)
       2009 – 4 months worked, $1663 per month (SGA level = $980)

404.1520, 404.1520b, 404.1527. With regard to medical opinions, the Commissioner's regulations give great deference to those provided by treating health care providers:

> Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. <u>If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.</u> When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(c)(2) [emphasis added]. This means a treating physician's opinion is generally given controlling weight, but is not inherently entitled to it. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as a whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). But that opinion will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. *Hacker*, 459 F.3d at 937. The ALJ must "always give good reasons" for the weight given to a treating physician's evaluation. 20 C.F.R. § 404.1527(c)(2); *see also Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007).

When a treating provider's opinion is entitled to controlling weight, the ALJ must defer to the physician's medical opinions about the nature and severity of an applicant's impairments, including symptoms, diagnosis and prognosis, what an applicant is capable of doing despite the impairments, and the resulting restrictions. 20 C.F.R. §

11

404.1527(a)(2); *Ellis v. Barnhart*, 392 F.3d 988, 995 (8th Cir. 2005). However, an opinion that an applicant is "disabled" or "unable to work" addresses an issue that is reserved for the Commissioner and therefore is not a "medical opinion" that must be given controlling weight. *Ellis*, 392 F.3d at 994.

### 2. *Analysis*

The record includes a written opinion signed by Dr. Shamini Suriar on August 12, 2011. AR 297-98. Dr. Suriar listed diagnoses of chronic backache, chronic pain syndrome and female stress incontinence. AR 298. She checked boxes indicating that Murphy's conditions were both temporary and permanent, stated that she was being treated with pain medication and noted that she had declined "spinal needles." *Id.* Dr. Suriar then checked a box indicating that Murphy cannot return to her usual employment and wrote that she will "never" be able to return to her usual duties. *Id.* Finally, Dr. Suriar responded affirmatively to a question as to whether Murphy should apply for long-term disability benefits. *Id.*

There is no dispute that Dr. Suriar is a treating physician. However, the ALJ determined that her opinion is entitled to "very little weight," finding it to be inconsistent with the weight of the evidence and Dr. Suriar's own treatment records. AR 15. Moreover, the ALJ found that Dr. Suriar's opinion improperly addresses an issue reserved for the Commissioner, as it essentially states that Murphy is "disabled." *Id.*

Murphy argues that the ALJ erred in failing to give more weight to Dr. Suriar's opinion. She points out that the ALJ did not explain, or offer examples of, how Dr. Suriar's opinion is inconsistent with her treatment notes. Murphy points out that she saw Dr. Suriar ten times from February 2009 through August 2011, with pain management being the primary focus of treatment. She further notes that Dr. Suriar directed her to take Oxycontin, a narcotic medication designed to manage moderate to severe pain, every twelve hours. AR 239, 231. She contends that nothing about Dr. Suriar's treatment notes is inconsistent with her written opinion.

Murphy also takes issue with the ALJ's statement that Dr. Suriar's opinion is inconsistent with the weight of other medical evidence. Among other things, Murphy references an opinion provided by Dr. Alan Scher in July 2010, based on a consultative examination. Dr. Scher found that Murphy had "[c]hronic, progressive, limiting localized back pain requiring narcotic analgesia." AR 267. He noted that the pain is non-radiating. *Id.* He further observed that Murphy had some discomfort after being seated for about 20 minutes, difficulty putting on her shoes, and could not bend to pick items up from the floor. AR 265. Dr. Scher's range of motion testing reflected limitations with respect to Murphy's (a) shoulder abduction and right-sided forward elevation, (b) external shoulder rotation, (c) knee flexion, (d) hip flexion, (e) hip abduction, (f) hip external rotation and (g) lumbar flexibility. AR 268-69. Murphy contends that Dr. Scher's consultative findings are consistent with Dr. Suriar's opinion.

Finally, Murphy contends that it was improper for the ALJ to reject Dr. Suriar's opinion simply because it includes an opinion on an issue (disability) that is reserved for the Commissioner. She notes that Dr. Suriar did not prepare the opinion for the Social Security Administration and that it does not purport to declare that Murphy is disabled within the meaning of the Act. According to Murphy, the fact that part of the opinion may appear to address an issue that is reserved for the Commissioner does not justify discrediting the entire opinion.

The Commissioner argues that the ALJ properly evaluated Dr. Suriar's opinion and provided good reasons for giving it little weight. Having reviewed the Commissioner's argument carefully, however, I find it to be an admirable but unsuccessful effort to rehabilitate the ALJ's superficial analysis of the medical opinions in the record. As for Dr. Suriar, Murphy is correct that the ALJ offered no explanation or examples of how her opinion is inconsistent with her own treatment records. Those records reflect numerous visits over a period of more than a year. Dr. Suriar diagnosed backache and chronic pain syndrome and repeatedly directed Murphy to continue taking Oxycontin. AR 231-43, 293-95. Dr. Suriar's treatment records are not so obviously

contrary to her opinion as to justify the ALJ's failure to provide an explanation for his conclusory finding of such inconsistency.

As for the contention that Dr. Suriar's opinion is contrary to other evidence in the record, I am particularly troubled by the ALJ's analysis of Dr. Scher's findings. As noted above, Dr. Scher conducted a consultative examination in July 2010 for the specific purpose of providing evidence relevant to Murphy's application for DIB. AR 263. The ALJ discussed some of Dr. Scher's findings but never stated what weight he was giving to Dr. Scher's opinion. AR 14. Of course, because the ALJ did not expressly assign any particular weight to Dr. Scher's opinion, he had no occasion to explain the reasons for assigning that weight.

This omission is important because at least some of Dr. Scher's findings and observations are inconsistent with the ALJ's RFC assessment. For example, as noted above, Dr. Scher noted that Murphy experienced discomfort after being seated for only about 20 minutes. AR 265. Yet the ALJ found that Murphy can sit for two hours at a time up to six hours during an eight-hour workday. AR 13. Moreover, Dr. Scher noted that Murphy had difficulty putting on her shoes and that she was unable to bend in order to pick items up from the floor. AR 265. The ALJ, however, found that Murphy can occasionally stoop, kneel, crouch, crawl and bend. AR 13. "Occasionally," of course, means up to one-third of an eight-hour workday. *See, e.g.,* AR 270. Thus, while Dr. Scher found that Murphy cannot bend at all, the ALJ found that Murphy has the RFC to bend for over two hours a day while working.

As noted above, Dr. Scher also found that Murphy has a decreased range of motion in numerous respects. AR 268-69. It is far from clear that Dr. Scher's findings are inconsistent with Dr. Suriar's opinion, yet the ALJ did not address the issue of whether Dr. Scher's opinion is entitled to any weight. Having determined (properly, I believe) that the opinion of a consultative examiner would be useful, the ALJ failed to explain what use, if any, he was making of the opinion.

14

The ALJ did, however, expressly find that an opinion provided in August 2010 by Dr. Tracy Larrison, a non-examining consultant, was entitled to "very substantial weight." AR 14. Dr. Larrison prepared a physical RFC assessment based on her review of records. AR 14, 270-77. Those records included Dr. Scher's report. AR 277. Dr. Larrison discredited that report because of "internal inconsistencies" but offered little explanation of those alleged inconsistencies. AR 276-77. Her resulting RFC assessment was largely adopted by the ALJ. AR 13, 271-72.

In short, three physicians provided opinions concerning Murphy's claim. The ALJ gave "very little weight" to the opinion of one (a treating source) and made no finding concerning the weight to be given to the opinion of the other (a consultative examiner). Meanwhile, the ALJ afforded "very substantial weight" to the opinion of a physician who never examined Murphy and adopted that opinion as establishing Murphy's RFC. While that conclusion is not necessarily wrong, the analysis that led to the conclusion is deeply flawed. The ALJ failed to provide good reasons, supported by substantial evidence in the record, for discrediting the opinion of Murphy's treating physician. The ALJ also failed to explain what weight, if any, he was giving to the opinion of the physician who examined Murphy for the express purpose of providing evidence concerning her disability claim.

Under these circumstances, I cannot affirm the ALJ's conclusions concerning the medical evidence, or his resulting RFC assessment. Remand is necessary for the ALJ to properly, and thoroughly, analyze all of the medical opinions of record. If the ALJ again determines that Dr. Suriar's opinion is entitled to little weight, the ALJ shall provide good reasons, supported by substantial evidence, for that determination. The ALJ shall also determine, and explain, the weight to be given to Dr. Scher's opinion. If the ALJ deems it appropriate, he may order a new consultative examination to provide additional evidence concerning the nature and severity of Murphy's impairments, including symptoms, diagnosis and prognosis, what she is capable of doing despite the impairments, and the resulting restrictions.

C.  *Murphy's Unemployment Benefits*

While Murphy alleges that she has been disabled since April 30, 2009, the ALJ found that she collected unemployment benefits during the entire year of 2010 and at least the first quarter of 2011. AR 16. The ALJ noted that a claimant may not receive unemployment benefits without representing that he or she is willing and able to work. *Id*. The ALJ discussed Murphy's receipt of unemployment benefits while addressing her credibility and her motivation for seeking DIB. *Id*.

Murphy does not deny that she received the unemployment benefits referenced by the ALJ, but appears to contend that the ALJ overemphasized this fact in finding that Murphy is not disabled. Murphy argues that it is error for an ALJ to rely on a claimant's receipt of unemployment benefits as the sole reason to discredit that claimant's credibility and deny benefits.

Murphy is correct that the receipt of unemployment benefits, alone, does not conclusively direct a finding of "not disabled." *See, e.g., Johnson v. Chater*, 108 F.3d 178, 180–81 (8th Cir. 1997) ("Applying for unemployment benefits 'may be some evidence, though not conclusive, to negate' a claim of disability.") (quoting *Jernigan v. Sullivan*, 948 F.2d 1070, 1074 (8th Cir. 1991)). Thus, had the ALJ started and ended his analysis with Murphy's receipt of unemployment benefits, Murphy would have a strong argument. Because that not is what happened, however, I do not know what Murphy is actually arguing.

The ALJ cited Murphy's unemployment benefits as one of several reasons for his ultimate finding that she is not disabled within the meaning of the Act. If Murphy seeks to argue that unemployment benefits are entirely irrelevant, she is wrong. *See, e.g., Johnson*, 108 F.3d at 180 ("Finally, the Commissioner's decision to deny Johnson disability benefits is bolstered by the fact that Johnson received unemployment compensation during the time she claims to have been disabled."). It was entirely appropriate for the ALJ to consider the fact that Murphy obtained unemployment benefits

during the period of time she claims to have been disabled. Because the ALJ did not base his adverse decision entirely on that fact, Murphy's argument has no merit.

## *CONCLUSION*

For the reasons set forth herein, the Commissioner's determination that Murphy was not disabled is **reversed** and this case is **remanded** to the Commissioner for further proceedings. Judgment shall enter in favor of the plaintiff and against the defendant.

On remand, the ALJ shall thoroughly re-analyze all of the medical opinions of record. If the ALJ again determines that Dr. Suriar's opinion is entitled to little weight, the ALJ shall provide good reasons, supported by substantial evidence, for that determination. The ALJ shall also determine, and explain, the weight to be given to Dr. Scher's opinion. If the ALJ deems it appropriate, he may order a new consultative examination to provide additional evidence. The ALJ shall then determine whether it is necessary to amend his prior assessment of Murphy's RFC and, if so, whether additional VE testimony is required in light of the revised RFC.

**IT IS SO ORDERED.**

**DATED** this 26th day of March, 2014.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE